The opinion of the court was delivered by
Breaux, J.
The Citizens Bank seeks to foreclose two mortgages executed by plaintiff’s father in its favor, one executed on the 7th day of September, 1837, and the other on the 13th day of July, 1838, both to secure the payment of seven hundred and fifty shares and of thirty shares of the capital stock of that bank. There was a release by notarial act to the mortgages in 1887, upon a portion of the property originally described, as set forth in the petition for order of seizure and sale.
There is no difference regarding the amount save that plaintiff alleges in his petition for an injunction that twelve shares of stock were taken from his father by the bank and sold and the proceeds received by the bank.
It is urged by the plaintiff that the bank having taken these twelve shares of stock and disposed of them, he can not be compelled to pay for stock thus taken. The plaintiff admits [that he and his coheirs accepted the succession of the mortgagor on 30th of August^ 1875. In the partition he received one-half of the land and his coheir the other.
The other grounds of injunction are: That at most his property is mortgaged only to the extent of his virile shares in the succession of his ancestor, which is one-half.
We think it sufficient, upon this point, to state that the codal pro *1376 visions of the law are, that a creditor holding a special mortgage can not be compelled to foreclose on one of two properties covered by the same- mortgage for a portion of the mortgage indebtedness. Every part of the property is liable for the payment of the debt.
The second ground set forth in the injunction is that the mortgage had been transferred to Hope & Co.; that the State, by special legislative enactment, became the pledgee of the mortgage securities, and held these securities to secure the payment of the bonds.
That the charter of the bank was forfeited in 1842, and the State assumed control and liquidation of its affairs.
That by Act 100 of 1847 of the General Assembly, the bank was authorized to require such payments on the stock by its stockholders as would realize funds sufficient to meet the obligation of the State for and on account of the bank.
That in 1850 the directors adopted a resolution fixing the liability of each stockholder at seven dollars per share, payable in seven annual instalments of one dollar each, and that the State declared that the payment of the sum of seven dollars on each share would relieve the stockholders from any further liability on account of the bonds issued by the State in favor of the bank; that the amount having been paid, further contributions can not be required. The plaintiff invokes Act 100 of 1847 as having, in view of his compliance with its terms, operated a complete discharge. He pleads specially that all the acts of the Legislature in reference to the Citizens Bank, adopted since May, 1850, are laws impairing the obligation of contracts; that they are violative of the Constitution of the State and of the general government.
The court long since characterized the transfer of the securities granted by shareholders to the State as a species of pledge.
As a matter of fact the mortgages by which the shares were se - cured, as to their payment, were never actually handed to the State; they remained with the bank.
It is well known that the bank’s existence dates from 1833, that the shares were fixed at one hundred dollars per share, secured by mortgage.
The advantage held out to the subscribers was the loan to which he was entitled and the number of his shares thus secured. It was designed that the aggregate of the mortgages should secure the cap *1377 ital, the bank was authorized to borrow to conduct the bank’s affairs, pay the stock of the subscribers and the loans to the stockholders.
In order to facilitate the management of the bank in obtaining these loans the directors were authorized to issue bonds payable by equal portions in the course of a number of years. For the payment of these bonds the mortgages of the stockholders were to remain a pledge to the holders of the bonds, until the final liquidation of the affairs of the bank.
On the face of the bonds issued in 1835, the Citizens Bank acknowledges its indebtedness to the bearer for the sum of one thousand dollars, amount of each bond. The modes adopted did not at first prove successful; investors did not choose to lend their money upon the security offered.
In 1836 the faith of the State was pledged, and the amount desired was obtained. The form of the bond was changed from what it was under the prior act.
Upon its face the State of Louisiana acknowledged its indebtedness to the Citizens Bank for the amount of the bond.
For the guarantee of the bond thus issued, and for which the State had pledged her faith, the securities granted were transferred to the State and the holders of the bonds. Thus the State became the transferee (together with the holders) of the bonds she had issued.
The court has heretofore decided that the fictitious tenure by the State of these bonds and securities was a species of pledge.
In subsequent decisions this court also decided that the mortgagors, who executed mortgages to the Citizens Bank are not released from the payment of the mortgages by any discharge which may have been granted by Hope & Co., the bondholders, to the banking department of the Citizens Bank, so that the relation of the State to the bonds, and that of the bondholder to the banking department, was not a defence which could avail the mortgagor as a debtor, as declared in the deed of mortgage to the bank. The capital of the bank consisted of the money raised, as already mentioned by the subscription to the bank of the stock, secured by mortgage.
It was in proof that “he,” the mortgagor, “acknowledged himself by these presents to be justly indebted to the said bank in the sum of-,” it was not possible to hold that the mortgagor was not indebted to the bank, but that he was indebted to the pledgees of the bank.
*1378 We return to enactment 100 of 1847, invoked by plaintiff. It authorized calls upon the stockholders. Plaintiff pleads that having paid the calls made under that act he has a right to immunity from further calls.
This court has decided that Act 100 of 1847 did not have the effect of relieving the stockholders of the Citizens Bank from all further contributions.
In that legislative act, in the different resolutions of the Board of Directors, there is no such limit to contributions as that pleaded by plaintiff.
We examined that point in the case of the Citizens Bank vs. Heirs of Gay, 47 An. 551, and gave it all the attention we could command. Our conclusion was that the act in question did not secure the shareholders from future calls.
The plaintiff has also interposed the plea of prescription.
The grounds upon which he bases that plea are similar to those pleaded in the case cited supra.
For the reasons assigned in that ease prescription is not a bar to the recovery of defendant’s claim.
The points heretofore decided here were submitted both in the brief and orally, without extended argument in their support, for the reason, counsel stated, of recent decisions of this court on similar issues.
While plaintiff’s counsel did not abandon any of the grounds of the injunction he argued solely against the demand for contribution on twelve stock shares disposed of by the board of directors of the bank, uoder the authority of the Act 246 of 1853.
These twelve shares, if deducted, would reduce defendants’ demand to the amount of two hundred and eighty-eight dollars. The plaintiff’s insistence is that he should not be condemned to pay contributions on stock sold to another; that mortgages are only accessory to secure a debt or obligation, and if the principal obligation be discharged the security becomes inoperative. The whole argument is based upon the idea of a divestiture of title to property without compensation; the taking of property without process of law and a plain violation of the construction of the Constitution.
From plaintiff’s premises the argument is unanswerable and conclusive. But his premises are not sustained. They receive no sup - port from the facts as we understand them.
*1379 The plaintiff overlooks that (different from the shares in other similar institutions) his shares are not paid-up shares. They represent an indebtedness of the shareholder to the bank, instead of a credit. It is not in proof that plaintiff or his ancestor paid these shares, or the amount borrowed, for which these shares secured by mortgage were deposited as security.
The law-making power in 1858, when this indebtedness was more clearly impressed upon the minds of the debtor, creditor, and of the members of the Legislature, and less prone to be influenced by sincere and honest, but none the less erroneous theories, enacted the “ mortgage existing against the stockholders to secure the portion of the stock so set apart shall not be thereby considered as raised, and the contribution due on the same shall remain as heretofore, payable by each of them respectively.”
The purpose, if we correctly appreciate the facts developed by the record, was not to lessen the payments on the shares due.
In other words, the amount of the indebtedness remained, and calls for payment were possible; only the number of shares was less to the extent of not more than one in fifteen.
In Citizens Bank vs. Heirs of Gay, 47 An. 551, it was argued recently that under Act 45 of 1873 a call was made only upon the mortgage stockholders.
That it was contrary to the rules of equality laid down in Brown vs. Insurance Co., 3 An. 177.
It was urged that the cash stockholders should also contribute (that is the stockholders who have paid up in full their shares under the Act 246 of 1853).
We were not impressed by defendants’ theory upon this point when it was presented in the cited case.
In the case under consideration the mortgage shareholder objects to these “ calls,” for reasons already mentioned, and thereby gives cause for inferring that the “calls” should be paid by the cash stockholders who have paid their shares in full.
At first we were impressed by the argument. Upon consideration it became manifest that the “cash shareholders” and “mortgage shareholders” are in reality words of identification; that the “ calls ” are made for the purpose of paying an indebtedness.
The case cited supra, Brown vs. Insurance Company, as sustaining a principle of equality, has no application.
*1380 The shareholder in the cited case had made payment of an amount upon his shares, and he was not a debtor to the company. He, therefore, had something to his credit on his shares. Here the shareholder has made no payment upon his shares other than amounts that went to the extinguishment of his indebtedness for money borrowed.
Under the state of facts here, the conclusion is inevitable. The judgment must be affirmed.
It is affirmed.
Nicholls, C. J., absent.